**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
RxUSA WHOLESALE, INC.,

                      Plaintiff,

        - against -

McKESSON CORPORATION,

                      Defendant.
-----------------------------------------------------------X

**ORDER**

CV 06-4343 (DRH) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

      Plaintiff has filed a letter motion, pursuant to Local Civil Rule 37.3(c) and Rule III(A)(1) of my Individual Practice Rules, seeking permission to take depositions in excess of the presumptive limit of ten (10) provided for in Fed. R. Civ. P. 30(a)(2)(A). *See* DE 22. Specifically, Plaintiff seeks to conduct 21 depositions and notes that such testimony is neither cumulative nor duplicative, adding that the information sought is not obtainable from other sources.

      Defendant opposes the motion, stating that it is willing to agree to 15 depositions, but asserting that Plaintiff has failed to meet its burden with respect to the other six proposed deponents, including Paul Julian (Executive Vice-President and Group President of McKesson) and John Hammergren (Chairman, President and Chief Executive Officer of McKesson). *See* DE 23. According to Defendant, these two depositions in particular "would be cumulative and prohibited under Rule 26(b)(2)(C)(I)." *Id.*

      A party may request leave to conduct more than ten depositions. The Court should grant such a request if it is consistent with the principles stated in Rule 26(b)(2). *Gross v. Bare Escentuals, Inc.*, No. 03-CV-3089, 2006 WL 316386, at *1 (S.D.N.Y. Oct. 30, 2006). Plaintiff

relies upon several factors to support this motion. For example, Plaintiff points to the fact that (1) the amount in controversy here is in excess of $50 million, (2) the Defendant is the largest distributor of pharmaceutical products in the world and has ample resources, and (3) the information sought is necessary to establish the elements of Plaintiff's claims and to resolve the issues in this litigation. In further support, Plaintiff has provided a list of the witnesses from whom deposition testimony is sought, along with identifying information about each witness and the information Plaintiff maintains the witness has which is directly relevant to Plaintiff's claims. Also, Plaintiff has categorized these witnesses as employees/former employees who were directly involved in matters relating to the Supply Agreement at issue in this case, employees who managed Defendant's Distribution Centers, and manufacturers from whom Plaintiff sought to obtain product directly by way of drop-ship or dock-to-dock ship.

Aside from proposed witnesses Hammergren and Julian, Defendant objects to the depositions of the three employees in charge of Defendant's Distribution Centers, including Newcastle and Buffalo. Defendant's primary objection is that Plaintiff cannot identify these individuals and therefore lacks a sufficient basis for exceeding the deposition limit. In addition, Defendant objects to the deposition of a designated representative of Proctor & Gamble ("P & G") (1) because Plaintiff has failed to state with specificity the identity of the P & G witness it claims to have spoken with and (2) that such testimony is in any event duplicative of testimony from the five other manufacturers whose witnesses have been specifically identified. Essentially, Defendant requests that Plaintiff's motion be denied and that each side be limited to fifteen depositions.

With regard to exceeding the ten-deposition limit of Rule 30(a)(2)(A), Defendant relies

upon Rule 26(b)(2)(C)(i) and principally upon two cases, namely, *Sigala v. Spikouris*, No. 00-CV- 0983, 2002 WL 721078, at *3 (E.D.N.Y. Mar. 7, 2002) and *General Electric Co. v. Indemnity Insurance Co.*, No. 06-CV-232, 2006 WL 1525970, at *2 (D. Conn. May 25, 2006). Rule 26(b)(2)(C)(i) provides that

> C) The frequency or extent of use of the discovery methods otherwise permitted under these rules and by a local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive....

Applying these principles, it is apparent that even though a witness may have discoverable information, that fact alone does not always entitle a party to depose that individual. *Gross*, 2006 WL 316386, at *1; *Commodity Futures Trading Comm'n v. Commodity Inv. Group, Inc.*, No. 05-CV-5741, 2005 WL 3030816, at *1 (S.D.N.Y. Nov. 10, 2005); *Sigala*, 2002 WL 721078, at *3. Fed. R. Civ. P. 30(a)(2)(A) presumptively limits the number of depositions each side may conduct to ten. The purpose of that rule is to "enable courts to maintain a 'tighter rein' on the extent of discovery and to minimize the potential cost of [w]ide-ranging discovery. . . ." *Whittingham v. Amherst Coll.*, 163 F.R.D. 170, 171-72 (D. Mass. 1995) (citing Notes of the Advisory Committee (1993), Fed. R. Civ. P. 26(b)(2)). Where a party who is seeking discovery has demonstrated why the additional testimony is necessary, a court has discretion to allow more than ten depositions. *Gross*, 2006 WL 316386, at *1; *Sigala*, 2002 WL 721078, at *1.

In *Sigala,* the plaintiff sought to recover $200,000 she allegedly loaned to the defendants. There, Magistrate Judge Go questioned why Defendants needed to take so many depositions given the issues involved and the amount of the damages, and she limited the number of depositions to thirteen in total. *Sigala*, 2002 WL 721078, at *1, 2. In ruling on defendant's

3

appeal of that order, Judge Glasser affirmed the decision, finding that Magistrate Go had fully considered the criteria spelled out in Rule 26(b)(2), including the needs of the case, the amount in controversy, the importance of the issues at stake and the importance of the proposed discovery in resolving the issues. *Id.* at \*4. Moreover, Judge Glasser found that the defendant failed to come forward with any evidence "beyond pure speculation that the additional persons he sought to depose would provide any evidence that was not cumulative of that he could obtain (or had obtained) from persons he was permitted to depose." *Id*.

In this regard, *Sigala* is distinguishable from the present circumstances. Plaintiff asserts that the damages in this case are in excess of $50 million – 200 times the damages at issue in *Sigala*. Moreover, Defendant does not dispute Plaintiff's allegation that McKesson is the largest distributor of pharmaceutical products in the world and ranks 16 on the Fortune 500 list, with annual net earnings in excess of $80 million. Nor are the circumstances here akin to *General Electric Co. v. Indemnity Insurance Co.*, an insurance coverage dispute, where plaintiff requested 15 depositions and defendant wanted 75 as part of the proposed discovery plan submitted before any actual discovery had taken place. *See* 2006 WL 1525970 at \*1. There, the court preliminarily limited the number of depositions to 15, a minimum number agreed upon by the parties. *Id.* at \*2. In doing so, the court noted that discovery had not yet begun, the moving party had not provided the specific names of the proposed witnesses, nor made a particularized showing of why the discovery was necessary. *Id*. (citing *Scanlan v. Potter*, No. 05-CV-291, 2006 WL 1207748, at \*1 (D. Vt. May 4, 2006)). The court declined to grant the large number of depositions, finding that the application was premature but also noted that the defendant was not prohibited from moving to expand the number of depositions at a future point in the litigation.

4

*Id*.

      I have been engaged with the discovery phase of the instant litigation since this lawsuit was commenced. This is not a "simple" breach of contract/specific performance case. Plaintiff here alleges that the Defendant breached its contractual obligations to supply products ordered by Plaintiff from either Defendant's primary distribution center, another of Defendant's distribution centers, or by way of drop shipment directly from the manufacturer. *See* DE 22 at 2. Plaintiff further claims that Defendant also breached its contractual requirement to accept for return those goods which had become unsaleable.

      The parties here have engaged in their good faith discussions pursuant to Local Rule 37.3 to try to resolve this issue and have not been able to do so. Plaintiff has set forth three categories of witnesses who comprise the list of 21 proposed deponents and further argues that these witnesses are necessary for Plaintiff to establish its claims regarding the alleged breach of contract. In addition to delineating these categories, Plaintiff has also provided a schedule of the specific individuals or positions which it seeks to depose, along with a description of the information Plaintiff contends the respective witness has. I have reviewed these categories and the schedule explaining the information each witness purportedly possesses and have weighed the arguments of both sides with respect to whether additional depositions should be granted. Each of these groupings is addressed individually below.

**1. Employees Involved in the Negotiation, Execution and
Performance of the Supply Agreement and Withholding of Product**

   **(A)** *Witnesses Listed by Defendant in Its Rule 26(a) Disclosures as Likely to Have Information Defendant May Use to Support Its Claims or Defenses*

Plaintiff identifies these first seven potential witnesses on the Schedule as Aileen McLaughlin, Patrick Blake, Scott Bradford, Brian Ferreira, Peter Pasquale, Gregory Stellato and Gregory Yonko. Having reviewed the descriptions provided, I find that there appears to be significant overlap in the substance of the testimony outlined for proposed witnesses Ferreira and Pasquale. Without further specificity, it is difficult to determine the basis of differentiation of their likely testimony. Therefore, for the time being, I am directing Plaintiff's counsel that he may depose one or the other of these two witnesses, but not both. I am therefore DENYING Plaintiff's request to take the depositions of both Ferreira and Pasquale. This decision and order is without prejudice. Should Plaintiff still believe, after the other depositions are completed, that the testimony of Ferreira or Pasquale (whoever was not deposed) is essential, Plaintiff may seek leave to take the additional deposition at that time.

   **(B)** *Employees of Defendant Directly Involved in the Transactions Between the Parties*

These employees appear on Plaintiff's Schedule as witnesses 8 through 12. Plaintiff identifies Scott Huber, a contracts analyst for Defendant, as well as the current employee of Defendant who is responsible for the "Econolink" system, and a former employee of the Defendant whose identity was disclosed to defendant's counsel but is subject to an attorney's-eyes-only designation, as important witnesses on issues relating to the drafting, execution and performance of the Supply Agreement, computerized order processing of Plaintiff's orders and

the solicitation and negotiations leading up to the contract. I find that the Plaintiff has established appropriate need to take these three depositions.

The two remaining proposed deponents in this grouping are Paul Julian and John Hammergren, two of Defendant's executive officers. Plaintiff states that CEO Hammergren received correspondence from Plaintiff and "is believed to have been ultimately responsible for setting policies regarding supply of products and the disposition of orders from Plaintiff." *See* DE 22-2 at 2. As to Executive Vice-President Julian, Plaintiff asserts that he is "believed to have knowledge regarding the availability of pharmaceutical product from manufacturers and Defendant's distribution centers." *Id*.

Critical to this discussion is an understanding that executive members of a company's management are not immune from discovery. "The fact that a witness has a busy scheduled is simply not a basis for foreclosing otherwise proper discovery." *Consol. Rail Corp. v. Primary Indus. Corp.*, No. 92-CV-4927, 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) (quoting *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y. 1984)). Likewise, an assertion that the witness lacks knowledge – as Defendant claims here with regard to both Julian and Hammergren – is subject to testing by a party through examination. *Consol. Rail Corp.*, 1993 WL 364471, at *1. Where a high ranking executive has personal knowledge of facts relevant to the litigation, a party opposing the deposition carries a heavy burden to demonstrate good cause for a protective order. *CBS, Inc.*, 102 F.R.D. at 822.

However, "permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation." Defendants argue that Plaintiff has provided no factual basis to support its belief that

Hammergren was ultimately responsible for setting policies regarding supply of products. With regard to Julian, Defendant maintains that although Julian signed the contract, he was not primarily responsible for or substantially involved in the negotiation of the Supply Agreement. Based on what has been presented to me regarding these two witnesses thus far by Plaintiff, there is no delineation of the "personal knowledge" these two witnesses have of the disputed facts underlying the breach of contact claims here. Therefore, I am directing Plaintiff to depose the other witnesses in this category first. If, after all the other depositions have been completed, Plaintiff can establish that either Julian or Hammergren (or both) have personal knowledge of the facts underlying the claims here and that such information cannot be derived from other sources, Plaintiff may then seek leave to take these additional depositions.

### 2. **Defendant's Employees Who Managed the Distribution Centers**

According to counsel, Plaintiff contacted at least three managers of Defendant's distribution centers who indicated that they would supply product to Plaintiff. Two of these managers are located at Defendant's Newcastle and Buffalo facilities and the three managers are listed as witnesses 13 through 15 on the Schedule. Although Plaintiff does not know the names of these individuals, counsel states that their testimony is necessary to establish that they were willing to supply product to Plaintiff and that product was available for that purpose. Defendant argues that Plaintiff should not be permitted to take these depositions because it cannot identify who they are in addition to the fact that Defendant has already agreed to let Plaintiff take the depositions of four other employees on the same topic.

*Whittingham v. Amherst College*, 163 F.R.D. 170, 171 (D. Mass. 1995) – a case cited by both parties as relevant to these issues – states only that "Rule 26(b)(2) assumes *some* specificity

8

with respect to numbers and names regarding the depositions a party seeks" (emphasis supplied)[1]. Further, Defendant opposes the motion to depose these three distribution center managers based upon the court's finding in *General Electric Co. v. Indemnity Insurance Co.*, denying the additional depositions on the grounds that although the defendant had listed the classes of individuals it sought to depose, it did not list the specific individuals it wished to depose. 2006 WL 1525970, at *1. However, it should be noted that *General Electric Co. v. Indemnity Insurance Co*. involved an insurance coverage dispute where the defendant sought to depose 75 witnesses – an application which plaintiff characterized as unnecessary and an overstatement of the complexity of the case. *Id.* The court found the application premature and denied it, but granted the parties leave to expand the number of depositions at a future point in the litigation. *Id*. at *2. I find the current circumstances distinguishable. The obvious difference here is that Plaintiff seeks to take six depositions more than the limit of 15 to which the parties have agreed. Likewise, rather than a "class" of individuals, Plaintiff has identified three specific people, albeit not by name, but clearly by position of distribution center managers. In light of Plaintiff's assertions regarding the knowledge these individuals likely possess as to availability of product, I find that the motion as to these witnesses is consistent with the

---

[1] It is worth noting that in *Whittingham*, the plaintiff sought to exceed the ten deposition limit where defendant's voluntary disclosure listed sixty individuals believed to have evidence relevant to plaintiff's claims. In his motion, plaintiff cited a large number of individuals who could potentially be deposed and thirty individuals who might be central trial witnesses to matters in dispute between the parties. However, plaintiff did not list the exact number of additional witnesses, not did he identify the particular individuals he sought to depose. Because plaintiff failed "to indicate the number and/or names of the additional depositions sought," the court noted it was "difficult to measure the appropriateness of plaintiff's motion." *Whittingham*, 163 F.R.D. at 171. I find these circumstances clearly distinguishable from the proposal presented by Plaintiff's counsel here and therefore find Defendant's reliance on *Whittingham* unavailing.

principles stated in Rule 26(b)(2) and am therefore GRANTING the motion to the extent of permitting the depositions of these three individuals.

3. **Manufacturers from Whom Plaintiff Sought to Obtain Product Directly**

Plaintiff states that it contacted at least six manufacturers in an attempt to arrange drop ship or dock-to-ship deliveries and was advised that those manufacturers would do so if Defendant agreed. These prospective witnesses are numbered 16 through 21 on Plaintiff's Schedule. Representatives of five of the six manufacturers are identified by name. The proposed Proctor & Gamble witness, however, is only identified as a "representative" of P & G. Defendant asserts the same reasoning here (i.e., holding of *General Electric Co. v. Indemnity Insurance Co*.) it did to preclude depositions of the distribution center managers, namely, that the P & G witness is not specifically identified. In addition, Defendant argues that the testimony of the other five manufacturer representatives is cumulative and duplicative. I disagree.

In light of the fact that Plaintiff needs to establish the availability of product and the willingness of manufacturers to supply product, it is not unreasonable to conclude that it needs the testimony of more than one manufacturer to help establish product availability across a broader spectrum. However, I have not been provided with a basis to evaluate why an unidentified P & G representative would have unique knowledge that could not be obtained from another source – or how six manufacturers' representatives can make the case more strongly than five. For these reasons, I am GRANTING Plaintiff's motion to take the depositions of Pauline Chenko, Vince Bilinski, Michael Conley, Dwight Cannon and John Tzaskalski. And for the reasons set forth above, I am DENYING the motion to take the deposition of the P & G representative. Once the depositions of the other five manufacturer representatives have been

taken, Plaintiff may renew this motion with regard to the P & G representative on a showing of unique knowledge or need.

In total, then, Plaintiff is permitted to depose 17 of the 21 witness on the Schedule. This ruling is without prejudice to Plaintiff renewing its motion upon the completion of the approved depositions, to seek relief to the extent set forth above.

**SO ORDERED.**

Dated: Central Islip, New York
June 25, 2007

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge