**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
RXUSA WHOLESALE, INC.,

                        Plaintiff,

          - against -

MCKESSON CORPORATION,

                        Defendant.
----------------------------------------------------------X

**ORDER**

CV 06-4343 (DRH) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

      Before the Court is Defendant McKesson Corporation's motion to compel Plaintiff RxUSA Wholesale, Inc. to (1) produce documents in response to Document Request Nos. 12, 17, and 44 of Defendant's First Request for Production of Documents; and (2) provide "adequate[ ]" responses to Request Nos. 5 and 6 of Defendant's Second Request for Admissions [DE 41]. In considering this motion, I have reviewed the pleadings and the following written submissions: (1) Defendant's moving papers [DE 41]; (2) Defendant's July 17, 2007 letter to the Court [DE 44]; (3) Plaintiff's opposition to Defendant's motion [DE 45]; (4) Plaintiff's September 12, 2007 letter to the Court [DE 58]; and (5) Defendant's September 17, 2007 letter to the Court [DE 59]. I also heard oral argument from the parties on June 18, 2007 and September 5, 2007.[1]

---

[1]     References in this Order to the transcripts from these oral arguments will be referred to as "June 18 Tr." and "Sept. 5 Tr.", respectively. Although the transcript from the September 5, 2007 hearing was subsequently sealed, the parties supplied the Court with a redacted transcript by letter dated October 2, 2007.

## II. BACKGROUND

### A. Factual Background

Plaintiff commenced this action against Defendant seeking damages based upon Defendant's alleged breach of contract.[2] In or about October 2003, Plaintiff, a company engaged in selling wholesale pharmaceutical products throughout the United States, and Defendant, a supplier of pharmaceutical goods, entered into a multi-year supply agreement ("Supply Agreement") that obligated Plaintiff to purchase from Defendant substantially all of its pharmaceutical products for resale. Plaintiff alleges that between approximately October 2003 through the first quarter of 2006, Plaintiff placed orders with Defendant for an aggregate of $1,483,587,185.78 of pharmaceutical products, but Defendant failed to deliver an aggregate of $1,032,622,011.56 of those products, which Plaintiff claims were necessary to fulfill its customer orders.

Plaintiff contends primarily that (1) Defendant's failure to deliver these products constituted a breach of the Supply Agreement, and (2) although Plaintiff attempted to obtain the ordered pharmaceutical products elsewhere, it was unable to do so. Plaintiff also claims that because the Supply Agreement contained provisions limiting Defendant's liability for certain damages, the Supply Agreement was unconscionable and void as against New York public policy. Finally, Plaintiff claims that Defendant refused to accept for return any goods that became unsaleable by virtue of expiration date, damage, or otherwise, and that this refusal constituted a separate breach of the Supply Agreement.

---

[2] The factual recitation here is taken from Plaintiff's Amended Complaint, dated September 18, 2006 [DE 5].

B.  **Procedural History**

On June 18, 2007, the parties appeared before the Court for a status conference to discuss numerous outstanding discovery issues and applications. During that conference, I heard the parties' respective positions regarding the adequacy of Plaintiff's response to Defendant's Document Request No. 17. I instructed the parties to confer in good faith and stated that if they could not resolve their differences, Defendant could file an appropriate motion to compel [DE 36]. Subsequently, Defendant filed, and Plaintiff responded to, the instant motion to compel, and the parties appeared before me for oral argument on September 5, 2007. During the September 5 hearing, Defendant presented several exhibits for which Plaintiff apparently had not received any notice. To avoid any possible prejudice, Plaintiff was given an additional week to file a written response addressing the issues raised by the exhibits during the discovery hearing. Plaintiff filed that written response on September 12, 2007 [DE 58] and Defendant responded on September 17, 2007 [DE 59].

### III.  STANDARD OF REVIEW

A motion to compel is entrusted to the sound discretion of the district court. *Am. Sav. Bank, FSB v. UBS Paine Webber, Inc. (In re Fitch, Inc.)*, 330 F.3d 104, 108 (2d Cir. 2003); *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000). The Second Circuit has noted that a "trial court enjoys wide discretion in its handling of pre-trial discovery, and its rulings with regard to discovery are reversed only upon a clear showing of an abuse of discretion." *DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.)*, 151 F.3d 75, 79 (2d Cir. 1998) (citing *Cruden v. Bank of New York*, 957 F.2d 961, 972 (2d Cir. 1992)). A district court is considered to have abused its discretion only "if it bases its ruling on a mistaken application of the law or a

3

clearly erroneous finding of fact." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).

**IV.    DISCUSSION**

Federal Rule 26(b)(1) defines the appropriate scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."[3] "Relevance" under Rule 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Barrett v. City of New York*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (noting that the information sought "need not be admissible at trial to be discoverable"). This Court has held that the "rights of litigants to discover and present relevant evidence in civil litigations is given great weight in federal courts." *Apicella v. McNeil Labs.*, 66 F.R.D. 78, 82 (E.D.N.Y. 1975).

This Court has also held that the scope of a Rule 34 request is governed by Rule 26(b). *United States v. 50.34 Acres of Land in East Hills*, 13 F.R.D. 19, 21 (E.D.N.Y. 1952). The Second Circuit has held that the "granting or denial of [a request for a response required under Rule 34] is within the discretion of the trial court." *Benning v. Phelps*, 249 F.2d 47, 48 (2d Cir. 1957); *see also Clift v. United States*, 597 F.2d 826, 829 (2d Cir. 1979) (holding that it is within the court's discretion to compel a response to a party's document demands).

---

[3]    Federal Rule 26(b)(1) was amended effective December 1, 2007. As the Advisory Committee Notes to the Rule make clear, however, these recent amendments were stylistic in nature, and do not impact the substance of the Rule.

4

### A.     Defendant's Document Request Nos. 12 and 44

Defendant's Document Request No. 12 seeks "All documents related to the RxUSA Affiliates' attempts to obtain product from manufacturers or wholesalers other than McKesson." [DE 41, Ex. A]. Defendant's Document Request No. 44 seeks: "[A]ll documents related to RxUSA's allegation in the Amended Complaint that 'Plaintiff was unable to obtain the ordered goods elsewhere, despite attempts by Plaintiff to do so. Thus, Plaintiff was unable to exercise its rights to "cover" pursuant to the Uniform Commercial Code of the State of New York.' " *Id.* Plaintiff responded to these document requests by stating that it "will make a reasonable search for, and will make available for inspection to the extent (I) located, (ii) not privileged, (iii) not work product, and (iv) as required by the Federal Rules of Civil Procedure" [DE 41, Ex. B].

Defendant argues that although Plaintiff has conceded that "over the course of its contract with McKesson[ ] it purchased product from sources other than McKesson," Plaintiff refuses to produce such documents on the grounds of relevance and burden [DE 41 at 1]. Defendant asserts that documents responsive to this request are relevant to numerous issues in this case, including: (1) Plaintiff's attempts to seek cover for the goods that Defendant allegedly failed to deliver – specifically, Defendant asserts that Plaintiff's purchases from sources other than Defendant are relevant to the issue of whether Plaintiff unreasonably failed to cover following Defendant's alleged non-delivery; (2) whether Defendant was contractually obligated to "fill unlimited attempted orders" by Plaintiff, an obligation Defendant asserts could only arise if the Supply Agreement is deemed a "requirements contract"; and (3) Plaintiff's bargaining position upon entering into the Supply Agreement, which relates to Plaintiff's unconscionability claim. *Id.* at 2. With respect to Plaintiff's objection on the grounds of burden, Defendant asserts that "counsel

5

for RxUSA has admitted that he has not ascertained what the burden [of production] would be to RxUSA." *Id.*

Plaintiff claims that it produced all documents regarding its attempts to "obtain[ ] product from any other wholesaler or manufacturer to fulfill any of the orders that are the subject matter of this action" [DE 45 at 1]. Plaintiff argues that Defendant seeks "records of products actually purchased from other wholesalers and manufacturers in connection with other orders that are not related to the orders at issue in the matter at bar." *Id.* at 2 (emphasis deleted). These records were not encompassed within Plaintiff's reading of Defendant's Document Request Nos. 12 or 44, and, in any event, Plaintiff maintains that such documents are irrelevant because "[i]t simply does not matter whether Plaintiff purchased goods from other sources that were used to fulfill other orders from other customers." *Id.* at 2 n.1. With respect to Defendant's claim that such purchases would be relevant to establishing whether the Supply Agreement was a "requirements contract," Plaintiff asserts it has already produced "spreadsheet records of aggregate purchases from other wholesalers during the relevant time period," and so there is no dispute that Plaintiff purchased goods from wholesalers other than Defendant. *Id.* Plaintiff does not address Defendant's argument that such documents are relevant to the unconscionability claim, except to state that its unconscionability claim is an alternate claim. Sept. 5 Tr. at 34.

A review of the record demonstrates that, thus far, Plaintiff has produced: (1) a "list of all products purchased by RxUSA from other wholesalers," which is relevant to the issue of whether the Supply Agreement was a "requirements contract"; (2) all documents evidencing "attempts by RxUSA to obtain product" from sources other than McKesson, including "a letter from RxUSA's manufacturers seeking to open accounts with the manufacturers"; and (3) no documents

regarding products RxUSA actually obtained from sources other than Defendant to fill orders that were originally supposed to be filled with McKesson's products – because, Plaintiff contends, no such product was actually obtained. Sept. 5 Tr. at 29-30, 36.

McKesson has made several arguments to support its entitlement to the production of transactional documents regarding purchases that RxUSA asserts were made to fulfill orders that are not the subject matter of this lawsuit. The Court finds, however, that these arguments are somewhat speculative and simply too broad to warrant production of such documents at this juncture. For example, Defendant argues:

> [I]f on September 4th RxUSA was seeking from McKesson product A, B and C to fill a specific order, and then on the same day was getting from wholesaler X those same products to fill an order, even if it is a completely different order, it indicates the availability of product on that day.

Sept. 5 Tr. at 34. The Court finds that, with respect to the issue of cover, even if these facts bear out, they indicate only that the product was available to fill *unrelated orders*. McKesson would have this Court make an inferential leap that such information would demonstrate that RxUSA could have obtained additional product (above and beyond what it had already purchased for the unrelated orders) to fulfill the orders at issue in this lawsuit, or that RxUSA had the ability (or legal obligation) to divert the available product away from its other customers to fulfill the orders at issue. The Court is not willing to order production of these documents on this basis alone.

Although McKesson made numerous arguments in support of the motion to compel during the September 5 hearing and used as exhibits certain documents that had been produced by Plaintiff, there remains a great deal of confusion and speculation as to what those documents actually indicate. I do not find it necessary, at this time, to make findings of fact regarding what

various documents demonstrate with respect to the motivations behind RxUSA's purchases and attempts to purchase pharmaceutical products. For now, the Court will not order further production of the transactional documents sought by McKesson regarding purchases RxUSA made – to fulfill product orders that are not the subject of this lawsuit – based solely upon Defendant's conclusory and unsupported arguments about the meaning of certain documents.

Accordingly, Defendant's motion to compel Plaintiff to produce documents responsive to Defendant's Document Request Nos. 12 and 44 is DENIED, without prejudice. McKesson may, however, take a Rule 30(b)(6) deposition(s) of one or more individuals who have knowledge and primary responsibility for RxUSA's attempts to obtain "cover" for the customer orders that were to be supplied with product purchased through the Supply Agreement. The Court expects the information obtained through the deposition(s) will clarify, distill, and narrow these issues. After the deposition(s) has concluded, Defendant's counsel may renew this motion to compel if the parties are unable to resolve the outstanding issues after a good faith meet and confer in accordance with Local Civil Rule 37.3.

### B. Defendant's Document Request No. 17

Defendant's Document Request No. 17 seeks: "All documents, including any calculations or compilations, relating to RxUSA's claimed damages" [DE 41, Ex. A]. Plaintiff previously stated to the Court that documents supporting its damages claims consisted of transactional documents between Plaintiff and Defendant as well as between Plaintiff and its wholesale customers, and that all such documents had been produced. June 18 Tr. at 13, 16-17. Accordingly, Plaintiff objected to the production of documents regarding its sales to retail customers – Plaintiff asserted that such retail orders "form none of the basis for any damage

calculations in this case." *Id.* at 16. Defendant contends that this assertion conflicts with Plaintiff's response to Defendant's Second Set of Requests for Admission in which Plaintiff describes his damages in terms of "the aggregate amount of goods ordered from Defendant by *all facilities*" [DE 41, Ex. D (emphasis added)].

During oral argument, Plaintiff again stated that "there is no claim in this case for any damages attributable to retail sales. It is all for wholesale sales." Sept. 4 Tr. at 46. Noting the conflict between this position and the wording of Plaintiff's response to Defendant's Second Set of Requests for Admission, I directed the parties to meet and confer in good faith to determine whether this response should be clarified, qualified, or amended in any way. I directed the parties to report back to the Court if their disagreement could not be resolved. Because the parties did not report any failure to resolve their disagreement, the Court assumes the parties were able to come to an amicable resolution of this issue. Accordingly, Defendant's motion to compel with respect to Document Request No. 17 is DENIED as moot.

### C. Request Nos. 5 and 6 of Defendant's Second Set of Requests for Admission

Defendant's Request for Admission No. 5 states: "Admit that the 2003 Supply Agreement between McKesson, RxUSA, RxUSA, Inc., and Parsons Medical Center Pharmacy, Inc. was terminated effective May 23, 2006" [DE 41], to which Plaintiff responded: "Plaintiff admits that Defendant *purported to* terminate the 2003 Supply Agreement effective as of May 23, 2006 . . ." *Id.* at Ex. D (emphasis added). Defendant's Request for Admission No. 6 states: "Admit that the 2003 Supply Agreement between McKesson, RxUSA PBM, Inc., and PBM America, Inc., was terminated effective August 5, 2006" [DE 41], to which Plaintiff responded: "Plaintiff admits that Defendant *purported to* terminate the 2003 Supply Agreement effective as

9

of August 5, 2006 . . . ." *Id.* at Ex. D (emphasis added).

Defendant asserts that Plaintiff's inclusion of the term "purported to" in his responses was improper, and asserts that it is entitled to have Plaintiff clearly admit or deny the assertion. Sept. 4 Tr. at 49-50. Although Plaintiff admits that the "purchase and sale requirements" of these Supply Agreements terminated on May 23, 2006 and August 5, 2006, respectively, Plaintiff contends that "unsaleable goods were permitted to be returned to the Defendant" subsequent to those dates [DE 45 at 3]. Accordingly, Plaintiff believes that the word "terminate" is ambiguous because there were certain rights that survived under the Supply Agreements even after the parties' purchase and sale obligations ceased.

During oral argument, I found that Plaintiff's responses to Request for Admission Nos. 5 and 6 could be amended to clearly set forth Plaintiff's position (i.e., "that the contract[s] w[ere] terminated to the extent that RxUSA had no further right to order goods under the contract" Sept. 4 Tr. at 51-52) without prejudicing its rights. *See id.* at 52. Accordingly, I directed Plaintiff to make such amendment within ten days. Having heard nothing further on this issue from the parties, the Court assumes that such amendments were made and this issue was resolved. Therefore, Defendant's motion to compel with respect to Plaintiff's responses to Request for Admission Nos. 5 and 6 in Defendant's Second Set of Requests for Admission is DENIED as moot.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to compel with respect to Defendant's Document Request Nos. 12 and 44 is DENIED without prejudice. Defendant's motion to compel with respect to (1) Defendant's Document Request No. 17 and (2) Defendant's Requests for Admission Nos. 5 and 6 is DENIED as moot.

**SO ORDERED.**

Dated: Central Islip, New York
       March 28, 2008

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge